## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JAMAR TRAVILLION,

               Plaintiff,

               v.

LAUREL R. HARRY, in her official
capacity as the Commonwealth of
Pennsylvania's Secretary of
Corrections, et al.,

               Defendants.

CIVIL ACTION NO. 3:22-cv-01196

(SAPORITO, C.M.J.)

## MEMORANDUM

This federal civil rights action commenced on August 1, 2022, when the plaintiff, Jamar Travillion, appearing through counsel, filed his fee-paid complaint. Doc. 1. Travillion is a convicted state prisoner, incarcerated at SCI Rockview, a state prison located in Centre County, Pennsylvania.

The defendants named in the complaint are: (1) Laurel R. Harry, state secretary of corrections, sued in her official capacity only;[1]

---

[1] The complaint actually named John E. Wetzel, a former secretary of corrections, in his official capacity, as its lead defendant. This was a misnomer, however, as Wetzel had resigned nearly a year earlier and had been succeeded in office by George Little, who served as acting secretary

*(continued on next page)*

(2) Richard Burns, a corrections officer, sued in his individual capacity only; (3) Jayson Lose, a corrections officer, sued in his individual capacity only; (4) Joshua Stover, a corrections lieutenant, sued in his individual capacity only; and (5) Matthew Crawford, a corrections lieutenant, sued in his individual capacity only.

The three-count complaint asserts federal civil rights claims against the defendants under 42 U.S.C. §§ 1981, 1983, and 1985. In Count I, Travillion asserts parallel § 1983 claims for damages against Lose for the use of excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment and for racial discrimination in violation of § 1981, arising out of an incident that

---

of corrections for an extended period. In 2023, while this action was pending, Little was succeeded by Laurel R. Harry, the current secretary of corrections. Because Wetzel was named in his official capacity as a public officer, first Little and then Harry were automatically substituted in his place. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see also Speer v. City of Norwich*, No. 20-CV-928, 2021 WL 1978791, at *6 (D. Conn. May 18, 2021) (finding automatic substitution under Rule 25(d) appropriate where a complaint seeking relief against a former public officer in his official capacity was filed after that officer ceased to hold office).

occurred on July 31, 2020.[2] In Count II, Travillion asserts parallel § 1983 claims for damages against Lose and Burns for deliberate indifference to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment and for racial discrimination in violation of § 1981, arising in the immediate aftermath of the same July 31, 2020, incident.[3] In Count III, Travillion asserts related § 1983 and § 1985(3) claims for damages against Lose, Stover, and Crawford for First Amendment retaliation and conspiracy to interfere with civil rights in violation of § 1985(3), arising out of an October 14, 2020, cell search, in which some of Travillion's legal papers were taken and destroyed.[4]

The defendants waived their right to reply to the complaint, pursuant to 42 U.S.C. § 1997e(g).[5] Doc. 13. The parties have had the

---

[2] Travillion alleges that Lose injured his foot and leg by closing a cell door on it. He further alleges that, shortly before this "assault," Lose told Travillion to move his "black ass" and referenced "you people" in what Travillion understood to be a reference to George Floyd protesters.

[3] Travillion alleges that Burns and Lose ignored his requests for medical attention with respect to his foot and leg injury.

[4] Travillion alleges that the cell search was conducted and his legal papers were taken and destroyed in retaliation for his filing of two inmate grievances related to the July 31 incident. The grievances were both filed in August 2020.

[5] Section 1997e(g) permits a defendant to a prisoner lawsuit to waive his or her right to reply to the complaint without admitting to any of the allegations contained therein. *See* 42 U.S.C. § 1997e(g)(1).

opportunity to engage in and complete discovery, and now, the defendants have filed a motion for summary judgment. Doc. 21. The motion is fully briefed and ripe for decision. *See* Doc. 22; Doc. 23; Doc. 24; Doc. 27; Doc. 28; Doc. 29; Doc. 30.

## I. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion,"

and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## II. UNDISPUTED MATERIAL FACTS[6]

The plaintiff, Jamar Travillion, is an inmate incarcerated in the custody of the Pennsylvania department of corrections. He claims that

---

[6] In accordance with the requirements of Local Rule 56.1, the defendants have filed a statement of material facts in support of their motion for summary judgment, together with an appendix of documentary exhibits. Doc. 23; Doc. 24. In accordance with the federal and local rules, the statement of material facts was set forth in numbered paragraphs and included references to the parts of the record that supported the statements. *See* Fed. R. Civ. P. 56(c)(1); M.D. Pa. L.R. 56.1.

The plaintiff has filed a response to the defendants' statement of material facts, responding to the numbered paragraphs set forth in the defendants' statements by admitting or denying each one, but few of his responses cite to competent evidence. Doc. 28. Where the plaintiff has failed to cite competent evidence to demonstrate a genuine dispute of material fact, the defendants' statements have been deemed admitted. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1.

defendant Lose, a corrections officer, assaulted him on July 31, 2020, causing injury to Travillion when Lose shut Travillion's cell door on his leg and foot. The plaintiff claims that Lose and defendant Burns, another corrections officer, denied him medical treatment for that injury. The plaintiff filed a formal inmate grievance against Lose and Burns concerning this encounter on August 18, 2020. This grievance was received on August 19, 2020, and logged as Grievance No. 884391.[7]

The plaintiff filed a second formal inmate grievance on August 25, 2020, this time against defendant Stover, a corrections lieutenant, claiming that Stover had tried to verbally intimidate him into withdrawing the first grievance. This grievance was received on August 26, 2020, and logged as Grievance No. 885654.

The plaintiff filed a third formal grievance on November 2, 2020, this time against Stover and defendant Crawford, another corrections lieutenant, claiming that Stover and Crawford had participated in a cell search on October 14, 2020, in which some of Travillion's personal

---

[7] The defendants' statement of material facts further notes that this grievance did not specifically articulate a § 1981 racial discrimination claim. But for the reasons discussed below, we have found that fact statement immaterial.

property was destroyed in retaliation for his filing of the two previous grievances.[8] The grievance did not name Lose at all as a participant in the cell search on October 14, 2020. This third grievance was received on November 3, 2020, and logged as Grievance No. 897483.

Notwithstanding Travillion's unsworn statements in his grievance papers—and the pleadings filed in this action—it is undisputed that Lose did not close the cell door on Travillion's foot or leg, that Travillion did not ask Lose or Burns for medical attention, and that Lose and Burns did not deny medical treatment to Travillion.[9]

---

[8] The defendants' statement of material facts indicates that this third grievance also named "Rutherford," another corrections lieutenant. But the Lieutenant Rutherford named in the grievance is not a defendant in this case.

[9] In support of these fact statements, the defendants have cited Lose's and Burns's testimonial declarations, which are based on their personal knowledge. In an attempt to dispute these fact statements by the defendants, the plaintiff has pointed to the unsworn statements he himself made in Grievance No. 884391. The defendants might properly rely on statements made by Travillion in his inmate grievances to support their motion for summary judgment because such statements constitute non-hearsay opposing-party admissions. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . admissions . . . ."); Fed. R. Evid. 801(d)(2). The plaintiff, however, cannot rely on unsworn statements as competent evidence in opposition to summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970) (noting that an unsworn statement does not

*(continued on next page)*

satisfy the evidentiary requirements of Rule 56); *Mitnik v. Cannon*, 789 F. Supp. 175, 176 (E.D. Pa. 1992) (holding that unsworn statements are not sufficient to raise a genuine issue of material fact).

In addition to the unrebutted declarations by Lose and Burns, the defendants have also cited surveillance camera footage depicting the encounter in which the plaintiff claims Lose shut the cell door on his leg and foot. The plaintiff does not contend that this video footage contradicts the testimonial declarations by Lose and Burns, but only that it is inconclusive, providing an insufficient view of the events to either support or contradict either side's account. We disagree. The video footage is entirely consistent with the testimonial declaration by Lose denying that he closed the cell door on Travillion's leg and foot. We need not, however, determine whether it "blatantly contradicts" Travillion's version of events, as Travillion has failed to adduce any evidence whatsoever to articulate a contrary version of events. *See generally Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Millbrook v. United States*, No. 15-CV-0832, 2016 WL 4734658, at *9 (M.D. Pa. Sept. 12, 2016) (applying *Scott* in the context of video footage). In other words, this is not a case where opposing parties tell two different stories—Travillion has failed to tell his story at all for summary judgment purposes.

Although his response to the defendants' statement of material facts does not do so, the plaintiff's opposition brief expressly relies on the allegations of his unverified complaint as well in opposing these fact statements. Opp'n Br. 4 ("Plaintiff's allegation is evidence and within the record of the case at summary judgment."), Doc. 27. While a defendant may properly cite allegations in a plaintiff's complaint, signed by plaintiff's counsel, as these allegations constitute binding judicial admissions by the plaintiff, *see* Fed. R. Civ. P. 56(c)(1)(A); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) ("[An] allegation in the [plaintiff's] complaint is a binding judicial admission."), a plaintiff cannot rely on his own *unverified* complaint as competent evidence in opposition to summary judgment. *See Tripoli Co. v. Wella*

*(continued on next page)*

On August 10, 2020—ten days after the July 31, 2020, encounter with Lose and Burns—Travillion was seen by a prison nurse for assessment of an injury to his leg and foot that had occurred when his leg and foot were caught in his cell door. Travillion reported pain, but denied redness or swelling.[10] Travillion was sent for x-rays of his leg, ankle, and

_Corp._, 425 F.2d 932, 935 (3d Cir. 1970) (holding that a party cannot rely on allegations of an unverified complaint to demonstrate a genuine issue of material fact); _Mitnik_, 789 F. Supp. at 176 (holding that allegations in an unverified complaint are not sufficient to raise a genuine issue of material fact); _Ratner v. Young_, 465 F. Supp. 386, 389 (D.V.I. 1979) ("A party's unsworn pleadings will not suffice to contest the factual matters offered in support of the motion.") (citing _Tripoli Co._, 425 F.2d at 935). _See generally Porter v. Pa. Dep't of Corr._, 974 F.3d 431, 443 (3d Cir. 2020) (holding that a _verified_ complaint may be considered as an affidavit on summary judgment); _El Bey v. Roop_, 530 F.3d 407, 414 (6th Cir. 2008) (noting that a "verified complaint" is one that is signed by the plaintiff personally under penalty of perjury pursuant to 28 U.S.C. § 1746).

Accordingly, in the absence of any citation by the plaintiff to competent evidence demonstrating a genuine dispute of material fact, these factual statements by the defendants are deemed admitted.

[10] In support of these fact statements, the defendants have cited to Travillion's medical treatment records, in which the treating nurse recorded Travillion's subjective reports of pain, but no redness or swelling, in his leg, ankle, and foot after getting it caught in his cell door. The plaintiff has objected to consideration of this evidence on hearsay grounds. But this portion of the medical provider's progress note indisputably falls within the hearsay exception for statements made for medical diagnosis or treatment. _See_ Fed. R. Evid. 803(4) (providing that "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general

_(continued on next page)_

foot. No evidence of any acute fracture was found.[11]

After Travillion filed his first inmate grievance, Grievance No. 884391, Lieutenant Stover was assigned to investigate the alleged use of excessive force by Lose. As part of the investigation, Stover interviewed Travillion in his office.

On October 14, 2020, Travillion's cell was searched, along with other inmate cells on A-Unit.[12] Stover and Crawford were part of a

_____

cause" is not excluded by the rule against hearsay). Therefore, the plaintiff's objection is overruled. The plaintiff has cited no evidence to contradict these fact statements.

[11] The defendants stated that "X-rays from August 10, 2020[,] show no injury to his left leg, ankle, and foot," with a citation to certain radiology reports. The plaintiff objected that, as stated, this characterization was an interpretation of medical records requiring an expert opinion. The objection is well taken and sustained. But it is beyond dispute that, while the cited radiology reports did not go so far as to conclude that there was no injury at all, each of the reports concluded with the impression that there was "[n]o radiographic evidence of an acute fracture."

[12] In support of this fact statement, the defendants have cited to a cell search record that documents that the searches occurred, as well as testimonial affidavits by defendants Stover and Crawford, which reference the cell search record in support of their testimonial declarations, based on their personal knowledge, that the searches occurred. The plaintiff has objected to this fact statement with reference to Rule 56(d), arguing that the statement cannot be admitted or denied without additional discovery concerning the materials cited by the defendants in support of the statement, namely a Rule 30(b)(6) deposition of an unspecified deponent, presumably the non-party state department

*(continued on next page)*

meeting beforehand where instructions were provided to the search

_____

of corrections.

When a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). A party moving for additional discovery under Rule 56(d) must submit an affidavit or declaration explaining "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Pa. Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012). The plaintiff has failed to submit any such affidavit or declaration. Moreover, the plaintiff has not explained why he was unable to obtain the requested discovery—whether by the deposition of a corrections department 30(b)(6) witness or the deposition of the defendants themselves, who are clearly familiar with this record— during the discovery period, which is now closed. *See Banks v. City of Philadelphia*, 309 F.R.D. 287, 292 (E.D. Pa. 2015) ("[Rule 56(d)] is not intended to protect those who have had an opportunity to complete discovery but who failed to do so by their own lack of diligence."). Accordingly, the plaintiff's objection to this fact statement is overruled.

In addition to his objection, the plaintiff has cited a portion of his own affidavit as evidence of a genuine dispute of material fact. *See* Resp. Statement of Material Facts ¶ 38, Doc. 28. Most of the cited portions of the affidavit do not contradict the defendants' fact statement or the Stover and Crawford affidavits. *See* Travillion Aff. ¶¶ 5–10, Doc. 29. The remaining paragraph cited by the plaintiff states that another inmate told Travillion that he heard one unidentified corrections officer instruct another unidentified officer to "make sure you tear[ ]up Travillion's lawyer shit real good" when several officers were meeting in a shower area just before searching Travillion's cell. Travillion Aff. ¶ 11. The defendants have objected to this statement as inadmissible hearsay. Reply Br. 6, Doc. 30. The objection is well taken and sustained.

team.[13] Travillion was not a part of that meeting, nor was he close enough to hear the discussion.[14] Stover and Crawford did not instruct any staff to harass or destroy any of Travillion's property.[15] Stover and Crawford did not personally destroy any of Travillion's property, nor are they aware of any of his property being destroyed.[16] Travillion's grievances were not

---

[13] The plaintiff has admitted this fact statement, but his response includes additional exposition, including reference to the inadmissible hearsay statement relayed to Travillion by another inmate, *see supra* note 12, and to unsworn statements he himself made in Grievance No. 897483, *see supra* note 9.

[14] In support of this fact statement, the defendants have cited to the testimonial affidavits of Stover and Crawford, based on their personal knowledge. In response, the plaintiff has once again cited a portion of his own affidavit describing an inadmissible hearsay statement relayed to him by another inmate. *See supra* note 12. The plaintiff further contends that this is a legal argument or conclusion requiring him to neither admit nor deny the statement. The plaintiff is mistaken: it is a statement of fact, which is deemed admitted in the absence of any citation to competent evidence demonstrating a genuine dispute of material fact.

[15] *See supra* note 14.

[16] In support of this fact statement, the defendants have cited to the testimonial affidavits of Stover and Crawford, based on their personal knowledge. In response, the plaintiff has simply stated that "[t]his fact is disputed" and that the testimonial statements by Stover and Crawford "require credibility determinations by a jury." The plaintiff has cited *no* evidence contradicting this fact statement or the underlying evidence. Therefore, this factual statement is deemed admitted. *See* M.D. Pa. L.R. 56.1; *DiMarco v. Borough of Saint Clair*, No. 20-CV-1335, 2022 WL 6685296, at *3 n.4 (M.D. Pa. July 19, 2022); *Marshall v. Corbett*, No. 13-CV-2961, 2022 WL 875609, at *10 (M.D. Pa. Mar. 23, 2022).

a factor in deciding whether to search his cell.[17] Rather, the decision to search Travillion's cell was part of maintaining security in the prison by periodically locking down and searching the housing units for contraband.[18]

## III.  DISCUSSION

### A. Conceded Claims Against Harry and Burns

The plaintiff has expressly conceded that all claims against the secretary of corrections, defendant Harry, should be dismissed. *See* Opp'n Br. 1 ("Travillion consents to the dismissal of [the secretary of corrections]."), Doc. 27. The plaintiff has further conceded that his § 1981 racial discrimination claim against defendant Burns should be dismissed. *See id.* at 6 ("Travillion does not oppose Burns'[s] dismissal under this [§ 1981] theory[.]"). Under these circumstances, we find that the plaintiff has waived these claims against these two defendants,

---

[17] In support of this fact statement, the defendants have cited to the testimonial affidavits of Stover and Crawford, based on their personal knowledge. In response, the plaintiff contends that this is a legal argument or conclusion requiring him to neither admit nor deny the statement. The plaintiff is mistaken: it is a statement of fact, which is deemed admitted in the absence of any citation to competent evidence demonstrating a genuine dispute of material fact.

[18] *See supra* note 14.

entitling them to summary judgment. *See Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431, 441–42 (M.D. Pa. 2009).

Accordingly, summary judgment will be granted in favor of defendant Harry with respect to all claims, and in favor of defendant Burns with respect to the plaintiff's § 1981 racial discrimination claim against him, set forth in Count II of the complaint.

## B. Exhaustion of Administrative Remedies

The defendants argue that they are entitled to summary judgment on the plaintiff's § 1981 racial discrimination claims and § 1985 conspiracy to interfere with civil rights claim against Lose because Travillion failed to exhaust available administrative remedies.[19]

But, "[a]lthough the prison grievance policy directs an inmate to

---

[19] The heading of this section of argument indicates that they also seek summary judgment on these grounds with respect to any portion of the plaintiff's § 1983 First Amendment retaliation claims against Stover and Crawford that are based on verbal threats. The body of the defendants' argument, however, makes no mention of these claims, discussing only the § 1981 and § 1985 claims against Lose. *See* Supp. Br. 15–16 ("Nowhere does Plaintiff specifically state a claim for section 1981 or 1985 violations in grievances 884391 and 885654. . . . Plaintiff's failure to state facts and make a claim that these moving Defendants denied full and equal benefits or conspired should be fatal to these claims."), Doc. 22. Therefore, we find that the defendants have waived any intended argument that the plaintiff's § 1983 retaliation claims are unexhausted to the extent that they are based on verbal threats.

- 15 -

'specifically state any claims he/she wishes to make concerning violations of [DOC] directives, regulations, court orders, or other law[,'] it does not require an inmate to identify all of the specific legal theories that might apply to the facts alleged in his or her grievance." *Beenick v. Lefebvre*, No. 14-cv-01562, 2016 WL 5402249, at *8 (M.D. Pa. July 29, 2016) (citation omitted), *report & recommendation adopted by* 2016 WL 5376120 (M.D. Sept. 26, 2016), *aff'd*, 684 Fed. App'x 200 (3d Cir. 2017); *see also id.* at *8 n.6. "As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA." *Jackson v. Ivens*, 244 Fed. App'x 508, 513 (3d Cir. 2007) (per curiam).

Here, there is clearly a shared factual basis between Travillion's first grievance, Grievance No. 884391, and his complaint with respect to his § 1981 racial discrimination claims against Lose. Whether he wrote the magic words "Section 1981," "full and equal benefits," or "racial discrimination" in his grievance is immaterial. Likewise, there is clearly a shared factual basis between Travillion's third grievance, Grievance No. 897483, and his complaint with respect to his § 1985 conspiracy to interfere with civil rights claim against Lose. Although Lose is not

identified by *name* in the third grievance, Travillion clearly articulated his claim that the actions of other corrections officers during the cell search on October 14, 2020, were done in retaliation for his prior grievance, Grievance No. 884391, against Lose.

Accordingly, we find that Travillion exhausted all available administrative remedies prior to filing this action, and we turn to the merits of his remaining claims.

### C. Eighth Amendment Excessive Force Claim

In Count I, Travillion asserts a § 1983 claims for damages against Lose for the use of excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and, (2) "a sufficiently culpable state of mind" of the defendant official. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

An Eighth Amendment challenge asserting excessive force is

subject to a malicious and sadistic standard. *See Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 247 (M.D. Pa. 2009) (citing *Hudson*, 503 U.S. at 6–7). The inquiry under this standard is whether prison officials applied force "in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 7.

As noted in the fact summary above, it is undisputed that Lose did not close the cell door on Travillion's leg and foot, as the plaintiff had alleged in his complaint. In the absence of any use of force against the plaintiff whatsoever—much less any malicious and sadistic use of force for the very purpose of causing harm—this defendant is entitled to judgment as a matter of law on this claim.

Accordingly, summary judgment will be granted in favor of defendant Lose with respect to the plaintiff's Eighth Amendment excessive force claim against him, set forth in Count I of the complaint.

### D. Eighth Amendment Deliberate Indifference Claim

In Count II, Travillion asserts § 1983 claims for damages against Lose and Burns for deliberate indifference to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and

unusual punishment.

"To demonstrate a prima facie case of cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted 'with deliberate indifference to his or her serious medical needs.'" *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

As noted in the fact summary above, it is undisputed that Travillion did not ask Lose or Burns for medical attention, and that Lose and Burns did not deny medical treatment to Travillion. Lose and Burns simply could not act with deliberate indifference if they were not aware that Travillion needed or desired medical attention. *See Boomer v. Lewis*, 541 Fed. App'x 186, 192–93 (3d Cir. 2013) (per curiam) (noting that prison officials could not be deliberately indifferent to an inmate's serious medical needs when they did not know of those needs); *Medina v. Little*, No. 23-886, 2023 WL 8027154, at *6 (E.D. Pa. Nov. 20, 2023) ("Ms. Woods could not have acted with deliberate indifference if she was not aware of Mr. Medina's medical needs."); *Mrlack v. Cal. Univ. of Pa.*, No. 17-1211, 2019 WL 1790713, at *7 (W.D. Pa. Apr. 24, 2019) (finding defendants "could not have been deliberately indifferent to [plaintiff's] serious

medical needs, because they were not aware of his needs"); *Prinkey v. Tennis*, No. 09-CV-0052, 2010 WL 3025145, at *3 (M.D. Pa. July 29, 2010) ("A defendant cannot be deliberately indifferent to a serious medical need if he is not aware that a serious medical need exists.").

Moreover, superficial injuries, such as abrasions, swelling, minor bleeding, and minor fractures, do not rise to the level of serious medical needs. *See Lucas v. Warden Lewisburg USP*, 573 Fed. App'x 205, 208 (3d Cir. 2014) (per curiam); *Wyatt v. Malisko*, No. 16-cv-01438, 2020 WL 3001936, at *11 (M.D. Pa. Mar. 19, 2020) (collecting cases). Medical treatment records in the summary judgment record document that, when he presented for medical treatment ten days later, he complained of pain but denied redness or swelling. On examination, a nurse found tenderness without inflammation, and she noted that Travillion's injured leg and foot were "[f]ull [w]eight-bearing." The nurse observed a "superficial" one-half-inch "old discoloration" at the injury site. Travillion was given over-the-counter strength painkillers, instructed to rest and ice his injured limb, and sent for x-rays. Defs.' Ex. H, Doc. 24-8. *See generally* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). As noted

in the fact summary above, it is undisputed that the x-rays revealed no acute fracture in Travillion's leg, ankle, or foot.

In the absence of any evidence that the defendants were subjectively aware of Travillion's alleged medical needs, that they refused any request for medical attention, or that Travillion suffered anything more than a superficial injury, these defendants are entitled to judgment as a matter of law on this claim.

Accordingly, summary judgment will be granted in favor of defendants Lose and Burns with respect to the plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against them, set forth in Count II of the complaint.

### E. Section 1981 Racial Discrimination Claim

In Counts I and II, Travillion asserts § 1983 claims for damages against Lose for racial discrimination in violation of § 1981, based on the very same alleged use of force and denial of medical care that form the basis of his Eighth Amendment excessive force and deliberate indifference claims.[20] Travillion claims that racially discriminatory

---

[20] We note that § 1981 itself does not provide a private right of action to enforce the rights guaranteed therein against state actors, but *(continued on next page)*

conduct by Lose denied Travillion the full and equal benefit of the laws as is enjoyed by white persons, and inflicted punishment and penalties beyond those to which white persons are subject.

Section 1981 was enacted to "protect[] against discrimination on the basis of race or alienage." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1232 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). The statute provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

"To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one

---

it has been held that § 1983 provides a vehicle for seeking a remedy against state actors for an infringement of § 1981 rights. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731, 735 (1989); *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009) ("[W]hile § 1981 creates rights, § 1983 provides the remedy to enforce those rights against state actors.").

or more of the activities enumerated in § 1981 . . . .'" *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002). "Section 1981 is not confined to contractual matters, though it is most often invoked in that context. It deals with the protection of a limited range of civil rights, including the right to make and enforce contracts, to sue, and to give evidence." *Bell*, 746 F.2d at 1232 (citation omitted). It also guarantees a right to equal benefit of the laws and to like punishment, irrespective of race. *See Mahone v. Waddle*, 564 F.2d 1018, 1027–28 (3d Cir. 1977); *Grier v. Galinac*, 740 F. Supp. 338, 341–43 (M.D. Pa. 1990) (addressing § 1981 claim that plaintiff would not have been stopped and questioned by police defendants if he had been white).

"To prevail on a claim under 42 U.S.C. § 1981, the plaintiff must present evidence of the defendant's discriminatory intent, as that section reaches only purposeful discrimination." *See Taylor v. City of St. Louis*, 702 F.2d 695, 697 (8th Cir. 1983) (per curiam). Standing alone, the mere fact that, during a single encounter with a black inmate, Lose allegedly struck him with a cell door and ignored his request for medical evaluation is insufficient to prove discriminatory intent under § 1981. *See Romero v. Tobyhanna Twp.*, No. 19-cv-01038, 2021 4149189, at *8 (M.D. Pa. Sept.

13, 2021). Travillion has failed to adduce any evidence that similarly situated white inmates have been treated differently, nor has he adduced any other evidence that defendant Lose was motivated by race-based animus.[21] *See Romero*, 2021 4149189, at *8; *Ilori v. Carnegie Mellon Univ.*, 742 F. Supp. 2d 734, 757 (W.D. Pa. 2010) (granting summary judgment against § 1981 plaintiff who provided no evidence of overtly racial comments or conduct by the defendants); *Dennis v. Thurman*, 959 F. Supp. 1253, 1263 (C.D. Cal. 1997) (granting summary judgment against § 1981 plaintiff who presented no evidence that the defendants were motivated by race-based animus); *Barr v. Hardiman*, 583 F. Supp. 1, 7 (N.D. Ill. 1982) (dismissing § 1981 claims where inmate-plaintiff failed to allege facts to show that he was treated differently than similarly situated white prisoners).

Moreover, as noted in the fact summary above, it is undisputed that Lose *did not* close the cell door on Travillion's foot or leg, that Travillion *did not* ask Lose for medical attention, and that Lose *did not* deny medical treatment to Travillion.

---

[21] In his opposition brief, the plaintiff argues that Lose made racially derogatory statements shortly before the incident, but he fails to cite any competent evidence to support this allegation. *See supra* note 9.

Accordingly, summary judgment will be granted in favor of defendant Lose with respect to the plaintiff's § 1981 racial discrimination claims, set forth in Counts I and II of the complaint.

## F. Section 1985 Civil Rights Conspiracy Claim

In Count III, Travillion asserts a § 1985(3) claim for damages against Lose, Stover, and Crawford for conspiracy to interfere with civil rights in violation of § 1985(3), arising out of an October 14, 2020, cell search, in which some of Travillion's legal papers were taken and destroyed.

"Section 1985 proscribes either public or private conspiracies to deprive persons of constitutionally protected rights." *Rogers v. Mount Union Borough ex rel. Zook*, 816 F. Supp. 308, 314 (M.D. Pa. 1993).

> The elements of such a cause of action are: 1) a conspiracy; 2) motivated by racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; 3) an act in furtherance of the conspiracy; and 4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 430 (M.D. Pa. 2009) (citing *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)).

With respect to the first element, Travillion has failed to adduce any

- 25 -

evidence of a conspiracy. "To constitute a conspiracy, there must be a 'meeting of the minds.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). Without more, the mere fact that Stover and Crawford met with other corrections officers prior to searching the cells of Travillion and other inmates does not prove a meeting of the minds or conspiracy. *See Jones v. Dalton*, 867 F. Supp. 2d 572, 585 (D.N.J. 2012) ("Without more, *several* meetings do not prove a conspiracy.") (emphasis added); *Adams v. Selhorst*, 779 F. Supp. 2d 378, 394 (D. Del. 2011) ("In the absence of *any* evidence that there was a meeting of the minds to achieve the alleged conspiracy's objectives, however, [a plaintiff] is not entitled to an inference that her bare allegations create an issue of material fact for trial.").[22] We further note that the plaintiff has pointed to no evidence whatsoever to suggest any involvement by Lose in the cell search activities on October 14, 2020, or any conspiratorial agreement with the

---

[22] In his opposition brief, the plaintiff argues that certain comments by an unidentified corrections officer, allegedly overheard by another inmate and relayed to the plaintiff, suggest a meeting of the minds to "tear up" Travillion's "lawyer shit," but, as previously noted, the plaintiff has failed to cite any competent evidence to support this allegation. *See supra* note 12. The plaintiff also cites his own unsworn statements made in an inmate grievance, which are inadmissible. *See supra* notes 9, 13.

others.

Moreover, with respect to the second element, Travillion has failed to adduce any evidence of racial or class-based discriminatory animus behind the defendants' alleged conduct. He has failed to proffer any evidence whatsoever that Stover or Crawford conspired against Travillion based on his race, and he has failed to proffer any competent evidence that Lose did so either.[23]

Accordingly, summary judgment will be granted in favor of defendants Lose, Stover, and Crawford with respect to the plaintiff's § 1985(3) conspiracy to interfere with civil rights claims, set forth in Count III of the complaint.

### G. Section 1983 First Amendment Retaliation Claim

In Count III, Travillion asserts a § 1983 claim for damages against Lose, Stover, and Crawford for First Amendment retaliation, arising out of an October 14, 2020, cell search, in which some of Travillion's legal papers were taken and destroyed.

---

[23] The plaintiff apparently contends that Lose was motivated by racial animus, based on racially derogatory statements he allegedly made months earlier on July 31, 2020, but the plaintiff fails to cite any competent evidence to support this allegation. *See supra* note 21.

To establish a § 1983 retaliation claim, a plaintiff must show: (1) constitutionally protected activity; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights; and (3) a causal link between the constitutionally protected activity and the retaliatory action. *See Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *Baker v. Benton Area Sch. Dist.*, 418 F. Supp. 3d 17, 48 (M.D. Pa. 2019).

First, it is beyond dispute that the filing of an inmate grievance constitutes constitutionally protected conduct. Travillion filed his first inmate grievance, Grievance No. 884391, against Lose and Burns on August 18, 2020. He filed his second inmate grievance, Grievance No. 885654, against Stover on August 25, 2020. *See Kelly v. York Cty. Prison*, 340 Fed. App'x 59, 61 (3d Cir. 2009) (per curiam) ("The filing of grievances is protected under the First Amendment.").

Second, the Third Circuit and this court have previously recognized that a retaliatory cell search that results in the confiscation or destruction of property may satisfy the adverse action element of a § 1983 retaliation claim. *See Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 Fed. App'x 122, 125 (3d Cir. 2017) (per curiam) ("[A] retaliatory search and

seizure may be sufficient to satisfy this prong of the claim."); *Rosario v. Cook*, No. 22-0866, 2024 WL 1077320, at *3 (M.D. Pa. Mar. 12, 2024); *Hernández-Tirado v. Lowe*, No. 14-1897, 2017 WL 34433690, at *10 (M.D. Pa. Aug. 10, 2017).[24]

The plaintiff's retaliation claim, however, founders at the third element, causation.

> Causation may be proved in various ways. A showing of "unusually suggestive" temporal proximity between the protected activity and the adverse action can be sufficient. A plaintiff also can prove causation, despite a lack of suspicious temporal proximity, by coming forward with evidence of a pattern of antagonistic conduct against the plaintiff subsequent to his protected conduct. Lastly, the plaintiff can seek to prove causation by pointing to the record as a whole for

---

[24] The parties' briefs also discuss the plaintiff's allegation that Stover verbally threatened Travillion when they met in August 2020 in an attempt to intimidate him into withdrawing his grievance against Lose. Although it is undisputed that Stover interviewed Travillion in the course of his investigation of the plaintiff's first grievance, Grievance No. 884391, the plaintiff has failed to adduce any competent evidence to support the allegation in his complaint and his second grievance, Grievance No. 885654. The plaintiff relies solely on unsworn statements in his grievance papers, which are not competent evidence on summary judgment. *See supra* note 9. In any event, verbal threats alone do not constitute adverse action for purposes of establishing a prima facie retaliation claim. *See Chruby v. Kowaleski,* 534 Fed. App'x 156, 161 (3d Cir. 2013); *Dunbar v. Barone*, 487 Fed. App'x 721, 723 (3d Cir. 2012) (per curiam); *Burgos v. Canino*, 358 Fed. App'x 302, 306 (3d Cir. 2009) (per curiam); *Bartelli v. Bleich*, No. 04-0899, 2005 WL 2347235, at *3 (M.D. Pa. Sept. 26, 2005).

evidence that suggests causation.

*Schlegel v. Koteski*, 307 Fed. App'x 657, 661–62 (3d Cir. 2009) (citations omitted) (citing *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008), *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997), and *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

The defendants argue that there is insufficient temporal proximity between the plaintiff's protected activity and the alleged retaliatory conduct. Their argument is well taken. In the absence of any other corroborative evidence, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003). Generally, "temporal proximity should be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence." *Diede v. City of McKeesport*, 654 F. Supp. 2d 363, 377 (W.D. Pa. 2009). Here, Travillion submitted his constitutionally protected inmate grievances on August 18 and August 25, 2020. The allegedly retaliatory cell search and destruction of his legal papers occurred on October 14, 2020, more than seven weeks later. *See Farrell*, 206 F.3d at

279 n.6 (suggesting that temporal proximity of seven weeks was insufficient to establish causation); *Conklin v. Warrington Twp.*, No. 06-CV-2245, 2008 WL 2704629, at *12 (M.D. Pa. July 7, 2008) (two-month temporal relationship, without more, is insufficient to establish causation); *Smith v. ABF Freight Sys., Inc.*, No. 04-CV-2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (finding temporal proximity of one-and-a-half months was not unduly suggestive of retaliatory motive).

In his opposition brief, Travillion appears to argue that his interview with Stover—which occurred in August, during the one-week period between Travillion's August 18 and 25 grievances—constitutes an intervening pattern of antagonistic conduct that bridges the gap between his grievances and the allegedly retaliatory cell search and destruction of his property.[25] But, as we have previously and repeatedly noted, the plaintiff has failed to adduce competent evidence to support his allegations of improper conduct with respect to this encounter.[26]

---

[25] The plaintiff also points to the meeting between Stover, Crawford, and other officers prior to searching his cell, but that event was contemporaneous with the cell search itself. We have taken it into account below in our consideration of the whole record.

[26] It is undisputed that Stover interviewed Travillion in his office, but there is no competent evidence of any verbal threat, intimidation, or other antagonistic conduct. *See supra* note 24.

Moreover, a single instance of antagonism is insufficient to bridge the gap and provide a causal link. *See McLaughlin v. Int'l Bhd. of Teamsters, Local 249*, 641 F. Supp. 3d 177, 208 (W.D. Pa. 2022) ("[A] single instance of antagonism is generally insufficient to show causation."); *Washco v. Fed. Express Corp.*, 402 F. Supp. 2d 547, 560 (E.D. Pa. 2005) ("One act does not constitute a 'pattern' of antagonism.").

Finally, Travillion appears to also argue that the record as a whole suggests causation. In addition to the alleged verbal threats by Stover—an allegation not supported by any competent evidence—Travillion suggests that the "perfunctory" manner in which the cell search was conducted and the meeting by Stover, Crawford, and other officers just before searching Travillion's cell, at which an unidentified corrections officer allegedly instructed another to "tear up" Travillion's "lawyer shit." But the plaintiff has failed to adduce any competent evidence to support this allegation.[27] Indeed, it is undisputed that Travilion's cell was searched along with other inmate cells on the same unit. It is undisputed that Stover and Crawford were part of a meeting beforehand where instructions were provided to the search team, but Travillion was not a

---

[27] *See supra* notes 12–18, 22.

part of that meeting, nor was he close enough to hear the discussion. It is undisputed that Stover and Crawford did not instruct any other staff to harass Travillion or destroy his property, they did not personally destroy any of Travillion's property, nor are they aware of any of his property being destroyed. It is undisputed that Travillion's grievances were not a factor in deciding whether to search his cell, but rather, the decision to search Travillion's cell was part of maintaining security in the prison by periodically locking down and searching the housing units for contraband. Based on our consideration of the whole record, we are unable to find sufficient evidence from which to infer causation.

Accordingly, summary judgment will be granted in favor of defendants Lose, Stover, and Crawford with respect to the plaintiff's § 1983 First Amendment retaliation claims, set forth in Count III of the complaint.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment will be granted, and the clerk will be ordered to enter judgment in favor of the defendants and against the plaintiff with respect to all claims.

An appropriate order follows.

Dated: March 26, 2024                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         Chief United States Magistrate Judge